FILED
CHARLOTTE, NC

JUN 8 2023

US DISTRICT COURT
WESTERN DISTRICT OF NC

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH**
**CAROLINA, CHARLOTTE**

---

*In the Matter of the foreclosure of a Deed of Trust executed by Francisco K. Avoki in the original amount of $ 136,500.00 (Received $ 126,342.23) dated **August 23,2022**, recorded in book No. 37598, at page 168, Mecklenburg County Registry.*

**Francisco K. Avoki,**
**Ekoko K. Avoki,** individually and on behalf of all others similarly situated,
*Plaintiffs.*
**AMERISAVE Mortgage, a corporation,**
**Freddie Mac, a corporation,**
**XXX-Does and unknown.**
*Defendants.*

**Demand for Jury trial**

**DOCKET NO. 3:23-cv-342-GM**

**COMPLAINT FOR THE**
**VIOLATIONS OF THE:**

1. TRUTH IN LENDING ACT. (TILA)
2. IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING.
3. NORTH CAROLINA UNFAIR OR /AND DECEPTIVE PRACTICES.
4. BREACH OF CONTRACT.
5. RIGHT TO RESCIND A LOAN.

## I. PRELIMINARY STATEMENT

1.      Plaintiffs **Ekoko K. Avoki** and **Francisco K. Avoki** in persona propria hereinafter "AVOKI" institutes this action for actual damages,[1] statutory damages, attorney fees, and the costs of this action against defendant **AMERISAVE   MORTGAGE & FREDDIE MAC AND unkonown**; for <u>multiple</u> violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, **(hereinafter TILA)**, and Regulation Z, 12 C.F.R. § 1026 [formerly § 226], proms, under the Consumer Financial Protection  Act of 2010 (CFPA), 12 U.S.C. §§ 5536(a), 5564(a) and AMERISAVE  has also violated provisions of the Federal Trade Commission Act ("FTC Act") also NCUDP (North Carolina unfair and deceptive practice) and Defendant AMERISAVE has dissimulated the closing disclosures and rescind form on August 23, 2022 forms, THEREFORE warranting an Injunction to enjoin Defendants from commencing with a trustee's sale on Plaintiff's property over the overcoming Right to rescind the loan; Plaintiffs AVOKI alleges:

---

[1] Under 15 U.S.C. § 1640(a), *See* § 11.5, *supra* (discussion of proof of actual damages) claim in timely manner within 1 year.

1

2. The acts or practices of Respondents alleged in this complaint have been in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

3. Since at least June 23 2022, Respondent AMERISAVE MORTAGE has strewn or has caused to be disseminated advertisements promoting the purchase, financing, and of its MORTGAGES at the attractive rate of **2.39 % APR\*** to plaintiff Francisco Avoki' emails ***See the email attached hereto as the Exhibit A***.

4. Respondent's advertisements include, but are not necessarily limited to, an advertisement on its website www.AMERISAVE .com, a copy of which is attached as ***Exhibit B*** This "fake" advertisement includes the following statements and depictions:

5. "MORTAGE RATES AS LOW AS 2.39 % APR **in sea of ONLINE lenders AMERISAVE stands out!**"

6. **" 3 MINUTES TO CREDIT APPROVAL "**

7. " The advertisement depicts a 733,603+ borrowers, $ 130 + billion in loan volume and 20 years' experience and promised " The advertised rates also assume the borrower fully documents income, assets and liabilities, escrows for taxes and insurance, and there is no subordinate financing.

8. Respondent also has disseminated or has caused to be disseminated advertisements promoting MORTGAGE Within 3 minutes while it will take couple months and other extensions of closed-end credit in consumer credit transactions, as the terms "advertisement," "closed-end credit," and "consumer credit" are defined in Section 226.2 of Regulation Z, 12 C.F.R. § 226.2, as amended, on one of its websites, a copy of which is attached as Exhibit B, Defendant AMERISAVE Mortgage Corporation ("AMERISAVE ") holds itself out to the public as a nationwide direct lender of residential home mortgages at the best rates available.

2

9. It advertises these rates on its own website, and promises consumers that they can quickly request a "lock-in" of low advertised rates online. (3 minutes). In truth, it is the consumer, not the mortgage rate, that AMERISAVE locks in.

10. AMERISAVE 's operations are a **classic bait and switch**, updated for the Internet era: in order to lock in a rate, the consumer must pay for a property appraisal of $ 500, even before AMERISAVE provides a Good Faith Estimate (GFE) of closing costs, a deceptive recurrent practice that is forbidden by **the Truth in Lending Act, 15 U.S.C § 1601 et seq. "TILA"**

11. After its email of 2.39 % on exhibit A, AMERISAVE then fails to lock in the rate, lets the rate lock period expire by asking Plaintiffs masses of documents ( See attached e-mail on exhibit C.) , and/or fails to honor its obligation to secure approval of consumers' mortgage loans, intentionally knowingly that plaintiff Francisco AVOKIis frustrated but cannot pull out the deal as plaintiffs have already pay the $ 500, AMERISAVE will charge a substantial cancellation fee, as high as $500.

12. "AMERISAVE lured consumers Francisco Avoki in with deceptive advertising, trapped him with costly upfront fees, and then illegally overcharged them for services from an undisclosed affiliate, appraisal company to be disclosed at discovery stage of this lawsuit "NOVO"…" "By the time Francisco Avoki suspected the advertised low rates were too good to be true, plaintiffs AVOKI had already committed to pay 500 $ by credit card to to AMERISAVE.

13. This action puts at legal light the AMERISAVE 's unacceptable **bait-and-switch scheme** When Plaintiffs were directed to AMERISAVE 's own website, AMERISAVE gave consumers quotes based on an **800 FICO score**, even where consumers had previously entered a FICO score below 800 on the third-party website that led them to AMERISAVE. This resulted in AMERISAVE offering Plaintiffs AVOKI a misleadingly low quotes.

3

14. AMERISAVE required consumers to order and give payment authorization information for an appraisal before it would provide a Good Faith Estimate (GFE) for the mortgage, and did not tell consumers until later that the appraisal orders were being referred to **_its own affiliated_** **_company_**. Deceptively advertised low interest rates that were not available: On its own website, its banner ads, and its listings on the website of a third-party rate publisher, AMERISAVE advertised misleading rates and terms for its mortgage products.

15. Locked consumers in with costly up-front fees: AMERISAVE required consumers to schedule and give payment authorization information for costly appraisals before providing consumers with a GFE, in violation of the Truth in Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA).

16. By leading Plaintiffs AVOKI to believe they were already obligated to pay such costly fees, of $ 500, AMERISAVE restricted Plaintiffs AVOKI' ability to shop for alternative products and better prices. AMERISAVE also marked up the cost of credit reports by as much as 400%, prior to giving consumers a scammed GFE.

17. AMERISAVE Failed to properly disclose to Plaintiffs AVOKI its affiliate relationship with the appraisal company as Defendant AMERISAVE referred practically all of its customers' appraisal orders to its affiliate, but, **in violation of RESPA,** failed to disclose that the appraisal company is owned by the very same CEO of AMERISAVE or affiliate after Plaintiffs AVOKI had already provided payment authorization information for their appraisals.

18. AMERISAVE also made numerous deceptive statements that led Plaintiffs FRANCISCO AVOKI to believe that AMERISAVE had no relationship with the appraisal company and that its fees were reasonable third-party fees. And the appraisal is accurate!! Plaintiffs AVOKI house was appraised on $ 205,000.00 while Zillow and independent appraisal offer $ 275, 000;

4

19.     Until August 23, 2022 date of closing, AMERISAVE failed to make any disclosure that this service was being referred out his own partner or and Subsidiary, as opposed to being provided by AMERISAVE itself.

20.     Plaintiffs assert, on information and belief, that AMERISAVE improperly delays and denies mortgage applications and dishonors its promises, in an effort to keep the Plaintiffs AVOKI "**locked in**," so it can time the market and maximize its profit in the loan to 5.37% and pay 126,342.23 instead of the $ 152,018 on the initial bogus GFE on the *exhibit D*; If it cannot make the loan at a high profit, Defendant AMERISAVE denies the loan for false reasons even for frivolous immigration reasons.

21.     Defendant AMERISAVE has engaged in a nationwide scheme of illegal, unfair, unlawful, and deceptive business practices that violate both Federal and NC State law. Respondent AMERISAVE has carried out this scheme by means of a centrally controlled set of policies and practices, and implements the scheme with form documents, form notices, and uniform deceptive advertising mechanisms.

22.     On and or about **07/26/2023 at 3:45:19 PM** AMERISAVE entered in loan agreement with Plaintiff Francisco Avoki for a Loan No. 19262650 amount of **$ 159,000 with a cash to close of $ 152,018** with estimate cost of $ 6,982 (see exhibit D.) Loan estimate, however on and about August 23, 2022 when Mr. Luis Martinez a notary public representing AMERISAVE shows up at plaintiffs ' house He has more than 149 papers to sign after signing these papers he left with all of them and refused to give copies to plaintiffs by stating calculatedly that it will be send, frustrated Plaintiffs Avoki asked him a copy and even send him an immediate email ( See attached hereto as Exhibit E) Mr. Luis Martinez transferred plaintiff Email to the law office named BC LAW FIRM , P.A. chaddoneal@bc-lawfirm.com and Chad answered to inform the title department?/ No

rescind forms have been tendered to Plaintiffs at that time however on and or about August 29, 2022 the plaintiffs received on his bank account $ 126,342.23 from (see attached bank statement as Exhibit F ) in opposition with the previous GFE of 7/26/2022 without the rescind forms in a blatant violation of the Federal truth in lending Act and RESPA Act.

23. AMERISAVE 's activities violate TILA by charging fees to consumers prior to the provision of a Good Faith Estimate moreover by smacking the right to rescind by taking all papers without a single copy to Plaintiffs Avoki. Its activities also constitute a violation of the Unfair or/ and Deceptive Acts and Practices ("UDAP") statutes of NC states, the practices described herein also constitute a breach of contract.

24. On and about August 29, 2022 AMERISAVE made a wire transfer of $ 126,342.23 instead of $ 152,018 as agreed on 07/26/2022 (See Exhibit D.) and calculatedly, wantonly and intentionally Defendant AMERISAVE has hidden or has caused to be hidden **all rescission forms and legal right about this loan** No. 19262650 and **to date** Defendant AMERISAVE had failed intentionally to give copies and especially the rescission forms!

25. Plaintiffs AVOKI seek injunctive relief to stop and prevent a repetition of the challenged conduct, and to ensure AMERISAVE 's compliance with applicable law regarding mortgage rate disclosures and allowable fees and rescission forms within 3 days.

26. Plaintiffs Avoki also seek damages and equitable relief for themselves and the Class and Subclasses generally, including restitution and disgorgement of funds obtained by AMERISAVE in violation of contract, right to rescission of the loan, breach of the contract, NC State and/or federal law. Especially the Court injunction to AMERICARE to rescind this loan, unduly sold on September 28, 2022 to FREDDIE MAC without any further disclosures. (see attached note attached hereto as Exhibit G.)

6

27.  **Therefore, the North Carolina State Court of Mecklenburg should take a judicial notice on the Lack of standing of Defendant AMERISAVE to foreclosure plaintiffs AVOKI House on the case number 23 SP 1051.**

## II. JURISDICTION AND VENUE

28.  The jurisdiction of this court for the First Cause of Action is invoked pursuant to the Truth in Lending Act, 15 U.S.C. § 1640(e) and 28 U.S.C. §§ 1331 and 1337.

29.  This court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367. And NC GEN. STAT. 75

30.  Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events and inadvertences giving rise to this Complaint occurred within the district of Charlotte where the plaintiffs AVOKI 'house is located at 5127 Statesville Road Charlotte, NC 28269 also AMERISAVE and FREDDIE MAC conduct substantial business activities throughout North Carolina and Mecklenburg County.

## III. PARTIES

31.  Plaintiff, **Francisco K. Avoki** "Consumer", is a natural person currently residing at 5127 Statesville Road Charlotte, NC 28269 and plaintiff **Ekoko K. Avoki** "Consumer" a physical person residing at the same address at 5127 Statesvilles Road Charlotte, NC 28269. In Avril 2022 Mr. and Mrs. AVOKI applied to AMERISAVE to take out their equity on their paid off 'house.

32.  Defendant **AMERISAVE MORTAGAGE**, Corporation (AMERISAVE ) is a domestic corporation duly licensed under the Consumer Loan Act, and the State of North Carolina to handle

7

Mortgages needs with his headquarter at : 3525 Piedmont Rd NE, 8 Piedmont Center - Suite 600, Atlanta, GA 30305Atlanta.[2] AMERISAVE is licensed originator and originator of Mortgages in North Carolina and other States, and thorough the United States.

33.    Defendant **FREDDY MAC, Inc**. is a domestic corporation duly licensed under the Consumer Loan Act, and the State of North Carolina to handle Mortgages needs with his headquarter at : 8200 Jones Branch Drive McLean, VA 22102.

At all times relevant hereto, the defendants by a **virtuoso** mechanism regularly[3] financed or offered to refinance extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than 15 years to 30 years, and is the person to whom the transaction which is the subject of this action is initially payable, making defendant a creditor within the meaning of TILA, 15 U.S.C. § 1602(g) [§ 1602(f) prior to Dodd-Frank amendments] and Regulation Z § 1026.2(a)(17) [formerly § 226.2(a)(17)].

### III. FACTUAL ALLEGATIONS

34.    On or about April 14, 2022, Plaintiff Avoki made a telephone inquiry to AMERISAVE about obtaining Loan to refinance their home already paid off and get their equity purposes.[4]

---

[2] This complaint assumes that the defendant is the original creditor in the transactions. Assignees are also liable for TILA violations that are apparent on the face of the disclosure statement and other documents assigned (or, in real estate-secured transactions, on the face of the disclosure statement, any itemization of the amount financed, the note, and any other disclosure of disbursements). 15 U.S.C. § 1641(a), (e). If an assignee is a defendant, allegations should be added about the assignment of the obligation from the original creditor, and that the violations are apparent on the face of the relevant documents.

[3] For a definition of "regularly," see Regulation Z § 1026.2(a)(17)(v) [formerly § 226.2(a)(17)(v)]; § 2.3.3, *supra*.

[4] With a narrow exception for certain credit card protections, TILA applies solely to consumer credit transactions; § 2.2, *supra*.

8

35.    AMERISAVE advertises itself as a discount lender and broke that can offer the lowest rates on residential mortgages. Its website explains why it can or the lowest rates:

36.    AMERISAVE utilizes state of the art technology, including line rate quotes, online good faith estimates and online loan applications. And pretends: "*Our systems automate the loan process which reduces our costs enabling us to provide lower rates.*" "*AMERISAVE is a direct correspondent lender for the largest mortgage banks in the country. We process, underwrite and close mortgages for most of the banks. Thus, we can shop your loan around like a broker, but we still maintain the control of a lender. Thus distinction is important, because it allows us to provide lower rates and to approve and close many more loans. We lend in all 50 states, but we only have one central location.*" "*Therefore, we have eliminated the costs of excessive brick and mortar branches*".

37.    AMERISAVE advertises its rates nationally on its own website in Google ads, on mortgage search websites like www.lendingtree.com, and on financial news aggregator websites such as Yahoo! Finance (http://finance.yahoo.com), where consumers go for general financial news. The Yahoo page, for example, reports average rates for different kinds of mortgages in the country, on a daily basis. If a consumer clicks on the reported rate, the website enables one to find the currently quoted rates in one's locality, including interest rate, points and closing costs.

38.    On these mortgage rate comparison websites, AMERISAVE often appears as offering the lowest rates of any loan provider If a consumer clicks on AMERISAVE 's quoted rate (via a web link), the consumer is sent to AMERISAVE 's website, www.AMERISAVE .com, which one can also visit directly.

9

39.     AMERISAVE has represented that securing a low mortgage rate will take a matter of 3 minutes, with such promises as "Apply, Get Pre-Qualified & Request Rate Lock... Complete the entire process online in less than 10 minutes!" AMERISAVE lists quoted rates on a wide variety of mortgage products, with different combinations of interest rates and upfront costs.

40.     It also provides links to compare its quoted rates with those of competitors, thus, AMERISAVE is explicit that the quoted rate are the rates it is currently offering. The website states: *"Get a Personalized Mortgage Rate Quote / Takes 10 seconds, No Personal Info Required."*

41.     AMERISAVE provides answers to basic questions about its services on its website, including explaining that one can quickly secure a rate lock by applying online:

> **How do I lock?**
> *To request a rate lock, just click the apply button. Complete the application. At the end of the application our system will let you know if you are pre-qualified. Once you are prequalified our system will allow you to request a lock for the rate you have selected.*
> *Defendant AMERISAVE represents that the applicant can lock in the rate before the rest of the application proceeds:*
>
> **How long does it take to get approved?**
> *Typically, you will receive your conditional pre-approval within 2 hours.*
>
> **What happens after I apply?**
>
> *After you apply, our system will let you know if you have been pre-qualified in seconds. After you are pre-qualified, our system allows you to lock in the rate you have selected.*

42.     Thus, AMERISAVE communicates to consumers that by submitting an application, they will receive an immediate or same-day notification regarding pre-qualification and the rate lock.

43. AMERISAVE has further deceived consumers by explicitly warning that its competitors give an inaccurate Good Faith Estimate and mortgage rate in order to charge other fees, and by clear implication, AMERISAVE does not:

> *Good Faith Estimates are just estimates. Many brokers and lenders will give you a low ball estimate, and then after you have paid for your appraisal, they will inform you that the mortgage rate or closing cost have gone up. Look for lenders that guarantee their closing costs up front.*

44. The small print on the website has included this disclaimer: "*Pricing shown assumes you can lock and close your loan today.*" This is a legal impossibility: the TILA Act requires that the creditor deliver disclosures of closing costs no later than the seventh business day before consummation. 12 C.F.R. § 226.19(a)(2)(i). **For this reason alone**, AMERISAVE 's representations of mortgage rates are **[A]bsolutely [d]eceptive**.

45. TILA is clear that the **only** fee a creditor or any other person may charge prospective borrower before providing a Good Faith Estimate is a fee for credit check. C.F.R. § 226.19(a) states in part:

> (ii) Imposition of fees. Except as provided in paragraph 23 (a)(l)(iii) of this section, neither a creditor nor any other person may impose a fee on a consumer in connection with the consumer's application for a mortgage transaction subject paragraph (a)(l)(i) of this section before the consumer has received the [good faith] disclosures required by paragraph (a)(l)(i) of this section. If the disclosures are mailed to the consumer, the consumer is considered to have received the three business days after they are mailed. (iii) Exception to fee restriction. A creditor or other person may impose a fee for obtaining the consumer's credit history b fore 2 the consumer has received the disclosures required by paragraph (a)(l)(i) of this section provided that the fee is bona fide and reasonable in amount.

46. AMERISAVE represents to consumers that a property appraisal is necessary in order for AMERISAVE to determine that there is a "high likelihood" that loan will be approved, and for AMERISAVE to lock in the mortgage rate. It schedules the property appraisal as soon as possible, in order to secure this payment.

47. AMERISAVE does not need an appraisal to lock in an interest rate, and does not use it for that purpose, AMERISAVE routinely charges and obtains fees for property appraisals prior to providing a Good Faith Estimate of closing costs.

48. AMERISAVE represents to consumers that a lock-in can be obtained in minutes but, its standard practice is to demand substantial additional documentation before providing a rate lock, which no applicant could provide in minutes. (See Exhibit C).

49. The documents AMERISAVE requires before completing a lock-in request, on a pre-printed form it transmits to the consumers (titled 15 "Final Step: Documents Needed Prior to Locking Your Rate"), include recent paystubs, W2s form, and statements of all liquid assets and retirement accounts.

50. One mortgage advice source, ***The Mortgage Insider***, explains this scheme:

**<u>Why do originators tell mortgage lock lies</u>?**

They tell lies simply to cover mistakes made at the time they quoted the rate. If they forgot to adjust the rate for low credit scores, higher loan-to-values, or to waive escrows, these stakes become evident at the time of lock. Loan officers also tell lock lies because of a false belief they can "call the market" and pick the day that makes them the most yield spread premium, they will risk your mortgage lock and lie on you about it. ( Source: *The MortageInsider.net, Mortgage Lock Fraud Abounds,* http://themortgageinsider.net/mortgage-lock-fraud-abounds.hfrnl (last visited May 8, 2023).

51. On information and belief, AMERISAVE is making deceptive promises to consumers that it can lock rates it does not intend to keep, so that it can maximize its profits at the expense of its consumers.

52. Plaintiff Francisco K. Avoki applied for a home mortgage online with AMERISAVE on April, 2022, after comparing rates at the mortgage comparison site www.bankrate.com, reviewing AMERISAVE 's website, and speaking with an AMERISAVE agent, Mr. Conner McClure Loan originator NMLS ID # 20899154 who received from plaintiff the appraisal fees, credit check fee of $ 500 and made fake lock up for $ 159,000 on borrower equity of his home in order to lock up at a 3.5 % for 15 years.

53. On or about August 23, 2022 about 10H15 AM, plaintiffs AVOKI executed a promissory note and security agreement with Mr. LUIS MARRTINEZ Notary working for AMERISAVE and after make a random signature and initials on 149 documents; AMERISAVE failed to leave the copy of all instrument signed for that purpose, which transaction is a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z § 1026.2 [formerly § 226.2].

54. **To Date regardless plaintiffs emails and phone calls** Defendant AMERISAVE did **not provide** a copy of the loan documents to plaintiffs and plaintiffs are debilitate to exercise their right of rescission in a very clear breach of TILA ACT.

55. TILA gives borrowers the right to rescind certain loans within three business days after consummation of the loan.15 U.S.C. § 1635(a). However, if the creditor fails to make required TILA disclosures to the borrower, the window for rescission is expanded **to three years** from consummation of the loan. 15 U.S.C. § 1635(f). Once a borrower rescinds a loan under TILA, the borrower "is not liable for any finance or other charge, and any security interest given by the[borrower] becomes void upon such a rescission."15 U.S.C. § 1635(b); see 12 C.F.R. §

13

226.23(a)(3). Within 20 days after the creditor receives a notice of rescission, the creditor must take steps to wind up the loan. 15 U.S.C.§ 1635(b). "Upon the performance of the creditor's obligations under this section, the [borrower]shall tender the property to the creditor [or] tender its reasonable value." Once both creditor and borrower have so acted, the loan has been wound up.

56. ("[R]escission suits must be brought within three years from the consummation of the loan."); *Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9ᵗʰ Cir. 2002)* ("[S]ection1635(f) represents an 'absolute limitation on rescission actions' which bars any claims filed more than three years after the consummation of the transaction.") (quoting King v. California, 784 F.2d 910, 913 (9th Cir. 1986)). However, the Supreme Court altered that usual procedure in *Jesinoski.* It eliminated the need for a borrower to bring suit within the three-year window to exercise TILA rescission. Instead, "rescission is effected when the borrower notifies the creditor of his intention to rescind." *Jesinoski, 135 S. Ct. at 792.* "[S]olongas the borrower notifies within three years after the transaction is consummated, his rescission is timely.

## IV. FIRST CAUSE OF ACTION
## *DUAL* VIOLATION OF THE TRUTH IN LENDING ACT, 15 U.S.C. 21 § 1601 *et seq.*

### *A.)* Charge of $500 on appraisal fee before issuing Good Faith Estimates of costs

57. Plaintiffs re-allege and incorporate by reference all preceding allegations of law and fact of the paragraph 1 to 57 AMERISAVE is a "creditor" within the meaning of TILA, be use it regularly extends consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required within the meaning of 15 U.S.C. § 16020 and 12 C.F.R. § TILA, specifically Federal Reserve Regulation Z, 12 C.F. § 226 et seq. The ("Regulation Z"), forbids mortgage lenders from charging any fee, other than a reasonable fee for a credit check, until it has provided a "Good Faith Estimate" of costs. 12 C.F.R.§ 226.190.

14

58.    AMERISAVE violates this provision, by charging Plaintiffs AVOKI for an application fee, and 500 $ five hundreds of dollars for a so call *"property appraisal,"* and/or charges for other fees before issuing Good Faith Estimates.

59.    The Regulation Z also states, "If an advertisement for specific credits terms specific credit terms, it shall state only those terms that actually are or will be arranged or offered by the creditor.' 12 C.F.R. § 226.240.

60.    The Plaintiffs have been damaged by such violations, in that they have been charged improper fees, and in that they have either paid such fees or had their property encumbered by such fees. Pursuant to 15 U.S.C. § 1640, Plaintiffs are entitled to relief under TILA, including statutory and actual damages, attorneys' fees, and injunction, and a declaratory judgment that AMERISAVE 's conduct violates TILA.

- By failing to properly identify property subject to a security interest in violation of 15 U.S.C. § 1638(a)(9) and Regulation Z § 1026.18(m) [formerly § 226.18(m)].[5]
- By failing to include in the finance charge certain charges imposed by defendant payable by plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 1026.4 [formerly § 226.4], thus improperly disclosing the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z § 1026.18(d) [formerly § 226.18(d)]. Such amounts include, but are not limited to:[6]

        a.    xxx service charge, 15 U.S.C. § 1605(a)(2); Regulation Z § 1026.4(b)(2) [formerly § 226.4(b)(2)];[7]

---

[5] *See* § 5.8, *supra*. The violation here is an "overinclusive" disclosure of the security interest, discussed in detail at § 5.8.4.3, *supra*.

[6] *See* § 5.4, *supra*. *See also* § 5.4.3 (tolerance), *supra*. Improper disclosure of the finance charge is a statutory penalty violation, § 11.6.5, *supra*.

[7] *See* § 3.7.3, *supra*. *See also* § 3.7.4, *supra*.

b.     $ xxx attorney fee required by the defendant, 15 U.S.C. § 1605(a), Regulation Z § 1026.4(a)(2) [formerly § 226.4(a)(2)];[8]

c.     $ xxx credit report fee, 15 U.S.C. § 1605(a)(4), Regulation Z § 1026.4(b)(4) [formerly § 226.4(b)(4)];

d.     $ xxx non filing fee, which, upon information and belief, was not used to purchase insurance in lieu of perfecting a security interest, 15 U.S.C. § 1605(d)(2), Regulation Z § 1026.4(e)(2) [formerly § 226.4(e)(2)];[9]

e.     $ xxx credit life insurance premium, for which disclosures required as a precondition to exclusion from the finance charge were not properly made, 15 U.S.C. § 1605(b), Regulation Z § 1026.4(d)(1) [formerly § 226.4(d)(1)];[10]

f.     $ xxx VSI property insurance, for which, upon information and belief, the insurer failed to waive all right of subrogation against the consumer, Regulation Z § 1026.4(d)(2) [formerly § 226.4(d)(2)].[11]

g.     By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. § 1606, Regulation Z § 1026.22 [formerly § 226.22], the defendant understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z § 1026.18(e) [formerly § 226.18(e)].[12]

---

Here the transaction is secured by real estate or is a residential mortgage transaction, an attorney fee may be included in the amount financed provided it meets certain requirements. § 3.9.6.2.4, *supra*.

[9] Non filing insurance premiums may be excluded from the finance charge only if they are for insurance which protects against risks caused by not perfecting a security interest and if the creditor actually purchases such insurance, rather than self-insuring. § 3.9.7.3, *supra*.

[10] Credit life insurance premiums may be excluded from the finance charge only if the purchase is voluntary and if proper disclosures are made. § 3.9.4.5, *supra*. If the consumer is alleging that the purchase of insurance was required by the creditor, the factual allegations should reflect that. *See* §§ 3.9.4.5.1, 3.9.4.5.3, *supra*.

[11] VSI property insurance may be excluded only if the consumer has a choice of providers, all proper disclosures are met pursuant to § 1026.4(d)(2) [formerly § 226.4(d)(2)], and the insurer waives all rights of subrogation against the consumer. *See* § 3.9.4.8, *supra*. All the precise amount will be disclosed during DISCOVERIES Stage of this litigation.

[12] *See* §§ 3.2.2, 5.5 (especially § 5.5.6.2), *supra*. Note that TILA permits inaccurate disclosures within certain allowable tolerances. §§ 5.4.3, 5.5.4, *supra*.

16

## B. Failure to disclose and give the rescission forms of the loan.

61.    On August 23, 2022 AMERISAVE Failed to give the loan copies of the actual mortgage to plaintiffs AVOKI nor submitted to them the rescission forms and Defendant AMERISAVE has concealed thoughtful mandatory loan disclosure including plaintiffs' right to rescind the loan therefore AMERISAVE clearly has elected to violate *Jesinoski v. Countrywide HomeLoans,135 S. Ct. 790, 792 (2015) and TILA Act.*

62.    TILA Act gives borrowers the right to rescind certain loans within three business days after consummation of the loan.15 U.S.C. § 1635(a).

63.    However, if the creditor fails to make required TILA disclosures to the borrower, the window for rescission is expanded to **three (3) years from consummation of the loan. 15 U.S.C. § 1635(f) here on August 29, 2022 thus, this rescission is timely sent to AMERISAVE.**

64.    Once a borrower rescinds a loan under TILA, the borrower "is not liable for any finance or other charge, and any security interest given by the[borrower]. . . becomes void upon such a rescission."15 U.S.C. § 1635(b); see 12 C.F.R. § 226.23(a)(3). By reason of the aforesaid violations of the Act and Regulation Z, defendant is liable to plaintiff in the amount of twice the finance charge or $ 2000, whichever is less,[13] actual damages to be established at trial, and attorney fees and costs in accordance with 15 U.S.C. § 1640, thus this loan No. 19262650 **Should be rescind** accordingly to the attached notification hereto as the *Exhibit H and the cashier certified check of $ 126,342.23 Exhibit I.*

---

[13] The violations alleged in § 15a–e are all ones giving rise to a claim for statutory penalties. § 11.6.5, *supra.*

17

## V. SECOND CAUSE OF ACTION
### (Breach of Contract)

65.    Plaintiffs re-allege and incorporate by reference all preceding allegations of law and fact from paragraph 1 to 64.

66.    A contract is formed between AMERISAVE and AVOKI to pay for an application fee and/or an approval fee to obtain a lock-in mortgage rate. AMERISAVE offers a lock-in rate in exchange for payment of the application and/or appraisal for Plaintiffs accept the offer by paying the fee(s), which constitutes consideration for obtaining a lock-in mortgage rate.

67.    Pursuant to the provisions of the contract with plaintiffs AVOKI who apply, AMERISAVE assumed the rights and obligations of a mortgage broker for plaintiffs AVOKI.

68.    AMERISAVE breached the terms of the contract by failing to lock in mortgage rates and process mortgage applications pursuant to agreed terms and within a reasonable amount of time as promised (3 days) here transformed to 87 days at a different amount and rate.

69.    Plaintiffs AVOKI gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their contracts with Defendant AMERISAVE, however, AMERISAVE has imposed or collected amounts that are not due and owing by contract including, without limitation, appraisal fees and application deposit fees.

70.    As a result of AMERISAVE 's breach of the contract, Plaintiffs AVOKI suffered and will continue to suffer reasonable and foreseeable consequential damages resulting from such breaches, including payment of application fees, appraisal fees, cancellation fees, costs of obtaining an alternative mortgage, and the loss of a favorable lock in mortgage rate which results in increased

18

interest, longer loan payoff times, and higher principle balances and other damages for breach of contract.

71. Plaintiffs are entitled to damage and other relief for breach of contract, in an amount to be determined according to proof at the time of trial. Pursuant to NC GEN STAT § 15 and supra. Plaintiff are entitled to recover their reasonable attorney's f s, costs, and expenses incurred in bringing this action.

## VI. THIRD CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

72. Plaintiffs re-allege and incorporate by reference all preceding allegations of paragraph 1 to 56 law and fact. Pursuant to the provisions of the contract with consumers who apply, AMERISAVE assumed the rights and obligations of a mortgage broker for Plaintiffs AVOKI and members of the Class as detailed above, AMERISAVE formed a contract with Plaintiff and members of the Class.

73. In addition to its express terms, every contract carries with it an implied covenant of good faith and fair dealing. This implied covenant prevents the contracting party from unfairly frustrating the other party's right to receive the benefits of the contract.

74. Defendant AMERISAVE is obligated to act in good faith and deal fairly with each individual or consumer who entered into a contract for a lock-in mortgage rate, pursuant to the implied covenant in the contracts, AMERISAVE had a duty not to deprive Plaintiffs and members of the Class of the benefits of those contracts, and had a duty to do everything that the contracts presupposed each of the parties would do to accomplish the purposes of those contracts.

75. AMERISAVE has violated the implied covenant of good faith and fair dealing its contracts with Plaintiffs AVOKI by failing to process mortgage applications pursuant to the agreed terms, failing to process mortgage loan applications consistent with its responsibilities to Plaintiffs

19

AVOKI, failing to provide lock-in rates, and unreasonably delay in processing of the loan for choosing best time to get more profit, keep loan paperwork such that Plaintiffs are deprived of a real lock-in rate.

76.     As a result of AMERISAVE's breach of the implied covenant f good faith and fair dealing, Plaintiffs suffered and will continue to suffer reasonable and foreseeable consequential damages resulting from such breaches, thus are entitle to compensation including payment of application fees, appraisal fees, cancellation fees, costs of obtaining an alternative mortgage, and the loss of a favorable lock-in mortgage rate which results in increased interest, longer loan payoff times, and higher principle balances and other damages for breach of the implied covenant of good faith and fair dealing.

77.     Plaintiffs AVOKI are entitled to damage and other relief for AMERISAVE's breach of the implied covenant of good faith and fair dealing, in an amount to be determined according to proof at time of trial.


## FOURTH CAUSE OF ACTION
### (Violation of NC's Deceptive and/or Unfair Trade Practices Act, NC CHAP. 75.1 Stat. § 1 et seq.,

78.     Plaintiffs re-allege and incorporate by reference all preceding allegations oflaw and fact from paragraph 1 to 77 and alleges:


The NC Deceptive and Unfair Trade Practices Act   NCDTA), NC GEN. STAT. 75.1

et seq., prohibits deceptive and unfair trade practices, and provides that an aggrieved person may

bring an action to obtain a declaratory judgment to such act or practice against the violator of  the

20

statute, and to obtain an injunction against a person who has violated, is violating or is likely to violate the statute.

79.    AMERISAVE engaged in an unfair or deceptive trade practice when it made false And / or misleading statements regarding consumers' ability to apply for a residential home mortgage, and to lock in a quoted interest rate by applying online and planning required fees, Plaintiffs AVOKI have suffered damage by virtue of one or more of these illegal, unfair and/or deceptive practices, therefore Plaintiff AVOKI and members of the NC are entitled to relief for AMERISAVE 's illegal, unfair and/or deceptive practices.

80.    AMERISAVE engaged in an unfair or deceptive trade practice when it represented that it was offering low-interest loans at rates that were lower than its competitors but were not, in fact, available or just a lure.

81.    AMERISAVE engaged in an unfair or deceptive trade practice when it required Plaintiffs AVOKI to pay an appraisal fee in order to obtain a rate-lock, when it subsequently failed to provide the rate-lock.

AMERISAVE engaged in an unfair or deceptive trade practice when it entered an agreement to process residential home mortgage applications for Plaintiffs AVOKI, but it did not process those applications as promised.

82.    As a result of the unfair and deceptive trade practices violations herein, Plaintiffs have been injured and are entitled to damages, including but not limited to the fees they paid AMERISAVE in connection with their applications for residential home mortgages. Thus, injunctive and declaratory relief also attorneys' fees and court costs are to be ordered.

21

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully pray that this Court:

1.      Assume jurisdiction of this case;

2.      Order the rescission of this Loan [Right to rescind within ONE YEAR. And Award actual damages to be established at trial pursuant to 15 U.S.C. § 1640(a)(1)];

3.      Wherefore Plaintiffs request that this Court find and issue and order certifying the Class and the NC appointing Plaintiffs and their future licensed counsel to represent the Class and Subclasses, and awarding:

4.      Actual, special, and general damages according to proof;

5.      Court to order Statutory damages and penalties; Restitution, disgorgement and all other equitable remedies according to the proof;

6.      Preliminary and permanent injunctive relief against AMERISAVE to ensure uniform standards of servicing conduct towards all class members and to deter future conduct;

7.      Prejudgment interest at the maximum legal rate;

8.      Punitive, exemplary and enhanced damages according to proof;

9.      An accounting;

10.    Declaratory Judgment as necessary to correct the wrongs inflicted on them; Litigation Expenses and Costs of the proceedings herein;

## DEMAND FOR JURY TRIAL

Plaintiffs Avoki demand trial on each and every cause of action so triable

22

## TILA COMPLIANCE ON ABILITY TO TENDER

Pursuant to *Yamamoto, 329 F.3d at 1172. Title 15 U.S.C. § 1635(b)* Plaintiffs AVOKI will fully refund the money received from AMERISAVE and Plaintiffs AVOKI have already write their certified check of **$ 126,342.23** from Bank of America, thus fulfil the legal requirement of rescission claim on the ability to pay back the Money received. (***Exhibit F.***) Thus, Plaintiffs AVOKI are fully able and willing to tender performance of their obligations by tendering the reasonable value of the loan of $ 126,342.23 a loan Amount to AMERISAVE at this time of right to rescind.

June 7th, 2023

Plaintiffs Avoki